**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert ARRINGTON, Jacqueline K. Burch, a/k/a Jacqueline Sullivan, and Howard "Moose" Baker, Defendants–Appellants.**

**Nos. 95–1566, 95–1595 and 95–1740.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 3, 1995.

Decided Jan. 2, 1996.

John H. Campbell, K. Tate Chambers, Office of the United States Attorney, Peoria, IL, for United States.

Dick L. Williams, Richard Parsons, East Peoria, IL, for Jacqueline K. Burch.

Richard H. Parsons, Peoria, IL, for Robert Arrington.

William H. Laws, Chicago, IL, for Howard Baker.

Before CUMMINGS, ESCHBACH and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Robert Arrington, Jacqueline Burch, and Howard Baker pled guilty to conspiracy to distribute crack cocaine. They now appeal their sentences. Arrington and Burch argue that the provisions mandating different sentences for offenses involving "cocaine" and "cocaine base" are ambiguous and thus the district court should have applied the lesser penalties for "cocaine." In addition, Burch argues that the disparate impact of the penalties for "cocaine base" on African–Americans justifies a downward departure from the guidelines. Finally, Baker claims that the district court should have granted him relief from the statutory minimum sentence under 18 U.S.C. § 3553(f). The district court rejected these challenges, and we affirm.

## I. "Cocaine" versus "Cocaine Base"

Arrington and Burch argue that the provisions mandating different penalties for

"cocaine" and "cocaine base" are ambiguous. They contend that both terms have the same scientific meaning and that the court should therefore apply the rule of lenity and impose the lesser penalties specified for "cocaine." We recently rejected this argument in *United States v. Booker,* 70 F.3d 488, 494 (7th Cir.1995), holding that the penalties for "cocaine base" apply to crack cocaine and the penalties for "cocaine" apply to all other forms of cocaine. The record reveals that Arrington and Burch were involved with crack cocaine; thus, the district court properly applied the enhanced penalties for "cocaine base."

## II. Disparate Impact on African–Americans

■■ Burch argues that the sentencing provisions for crack cocaine have a disparate impact on African–Americans. She contends that this disparate impact gives the district court the authority to depart downward from her guideline range. The district court held that it had no authority to grant a departure. Although we have no jurisdiction to review a district court's discretionary refusal to depart from the guidelines, *United States v. Reynolds,* 64 F.3d 292, 298 (7th Cir.1995), we may review the question of whether the district court had the authority to grant a departure. *Id.*

■■ Burch correctly notes that African–Americans comprise the majority of those who have been convicted of crack cocaine offenses. For example, in 1993, 88.3 percent of the convictions in federal court for the distribution of crack cocaine were obtained against African–American defendants. *U.S. Sentencing Commission: Executive Summary of Special Report on Cocaine and Federal Sentencing Policy,* 56 Crim.L.Rep. 2159, 2167 (Mar. 1, 1995). However, the fact that a guidelines provision may have a disparate impact on a particular racial group is not

sufficient to justify a departure from the guidelines. Although we have not previously addressed this question, every other circuit to consider it has concluded that this disparate impact on African–Americans does not justify a downward departure from the guidelines. *See United States v. Alton,* 60 F.3d 1065, 1071 (3d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 576, 133 L.Ed.2d 500 (1995); *United States v. Lewis,* 40 F.3d 1325, 1345–46 (1st Cir.1994); *United States v. Thompson,* 27 F.3d 671, 679 (D.C.Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 650, 130 L.Ed.2d 554 (1994); *United States v. Maxwell,* 25 F.3d 1389, 1400–01 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 610, 130 L.Ed.2d 519 (1994); *United States v. Haynes,* 985 F.2d 65, 70 (2d Cir.1993); *United States v. Pickett,* 941 F.2d 411, 418 (6th Cir.1991).[1] Rather, departures are reserved for special cases with unusual circumstances that "render unjust an otherwise just sentence under the guidelines." *Thompson,* 27 F.3d at 679. The fact that defendants convicted of offenses involving crack cocaine receive enhanced penalties is not a sufficiently "atypical" or "unusual" circumstance to warrant a downward departure. *Id.; see also Alton,* 60 F.3d at 1071; *Pickett,* 941 F.2d at 418. In addition, the guidelines explicitly state that race is "not relevant in the determination of a sentence." U.S.S.G. § 5H1.10.[2] Therefore, the impact of the enhanced penalties for crack on African–Americans does not give the district court the authority to depart downward. *Thompson,* 27 F.3d at 679; *Maxwell,* 25 F.3d at 1401.

## III. Relief from the Statutory Minimum Sentence under § 3553(f)

The district court held Baker responsible for 113 grams of crack cocaine and imposed the mandatory minimum sentence of ten years of imprisonment and five years of supervised release. *See* 21 U.S.C.

---

1. Burch cites a district court case, *United States v. Majied,* 1993 WL 315987 (D.Neb.1993), where the court granted a downward departure based on the disparate impact of the sentencing provisions for crack cocaine. *Majied* was subsequently reversed by the Eighth Circuit. *See Maxwell,* 25 F.3d at 1400–01.

2. The *Thompson* court noted that it would be problematic if departures from the crack cocaine sentencing provisions were granted for "African–American defendants and not for defendants of other races, since the same offense would then lead to different punishments based solely on the defendant's race." *Thompson,* 27 F.3d at 679.

§ 841(b)(1)(A)(iii). Until recently, a defendant could receive a sentence below the statutory minimum only if the government made a motion for a departure based on the defendant's substantial assistance to authorities. *See United States v. King*, 62 F.3d 891, 893 n. 1 (7th Cir.1995); *United States v. DeMaio*, 28 F.3d 588, 591 (7th Cir.1994); *cf.* 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1. In 1994, Congress passed the Mandatory Minimum Sentencing Reform Act (MMSRA), which limits the applicability of statutory minimum sentences. *See* 18 U.S.C. § 3553(f).[3] Essentially, § 3553(f) directs that statutory minima shall not apply to first-time, non-violent drug offenders who were not organizers of criminal activity and who have made a good-faith effort to cooperate with the government.

Baker argues that he qualifies for relief from the statutory minimum under § 3553(f). If the statutory minimum were inapplicable, Baker's sentencing range under the guidelines would be 87–108 months. The district court held that Baker did not qualify for relief from the statutory minimum because he did not truthfully provide all of the information concerning his offense to the government prior to sentencing. *See* 18 U.S.C. § 3553(f)(5).[4] Baker argues that this ruling was erroneous for several reasons.

## A. Stipulation of Facts

In his plea agreement, Baker stipulated to the following facts of his offense:

> From about October 1992 until April 1994 co-defendant Robert "Base" Arrington entered into an agreement with other persons including Howard Baker to distribute cocaine base (crack) in Bloomington, Illinois, and elsewhere. As part of this agreement Arrington or those he conspired with transported "crack" from the Chicago, Illinois area to Bloomington. Arrington and those he conspired with then distributed the "crack" in Bloomington and elsewhere.

> During the time of the conspiracy, various vehicles were used by Arrington and others to transport money and "crack." Baker and others utilized pagers, telephones, and several apartments and houses to assist in the distribution of the "crack." On February 28, 1994, Baker delivered "crack" cocaine to a confidential informant in Maywood, Illinois.

Baker never made any further attempts to cooperate with the government nor did he reveal any additional details concerning his crime. He contends, however, that this stipulation of facts was sufficient to satisfy § 3553(f)(5).

Baker notes that the government never requested that he provide any additional information. Consequently, he argues, he should not be expected to provide what the government apparently does not desire. This argument, however, misconstrues the purpose behind § 3553(f). Congress enacted the MMSRA in order to remedy an inequity in the old system, which allowed relief from statutory minimum sentences only if the government made a motion to reward the defendant's substantial assistance. The government generally makes substantial assistance motions only for defendants who provide new or useful information. Thus, under the old system, defendants who had more information to provide fared better, and these were often higher-level dealers whose greater involvement in criminal activity resulted in their having more information. "Mules," lower-level dealers, or defendants whose co-conspirators had already talked to the government often had no new or useful information to trade. Even if they told the authorities everything that they knew, they did not receive departures under § 3553(e) and often received longer sentences than other, more

---

3. An analogous provision was added to the guidelines. *See* U.S.S.G. § 5C1.2.

4. In order for a defendant to qualify for relief from the statutory minimum under § 3553(f), the court must determine, among other things, that

 (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

 18 U.S.C. § 3553(f)(5).

culpable defendants. *See* Gerald W. Heaney, *The Reality of Guideline Sentencing: No End to Disparity*, 28 Am.Crim.L.Rev. 161, 198–99 (1991); *cf. United States v. Torres*, 33 F.3d 130, 132 (1st Cir.1994), *cert. denied,* ── U.S. ──, 115 S.Ct. 767, 130 L.Ed.2d 664 (1995).

■ The legislative history of § 3553(f) reveals that Congress passed the MMSRA in order to address this problem. *See* Mandatory Minimum Sentencing Reform Act of 1994, H.R.Rep. No. 103–460, 103rd Cong., 2d Sess. (1994) ("Ironically, due to the current operation of mandatory minimums, mitigating factors that are recognized in the guidelines and generally are considered in drug cases do not apply to the least culpable offenders except in rare instances."). Section 3553(f) was intended to benefit defendants who wished to cooperate with the government (and in fact did everything they could to cooperate) but simply had no new or useful information to provide.[5] But § 3553(f) was intended to benefit only those defendants who truly cooperate. Thus, to qualify for relief under § 3553(f), a defendant must demonstrate to the court that he has made a good faith attempt to cooperate with the authorities. *See United States v. Wrenn*, 66 F.3d 1, 3 (1st Cir.1995) ("Section 3553(f)(5) contemplates an affirmative act of cooperation with the government no later than the time of the sentencing hearing.").

■ Baker has not fulfilled the requirements of § 3553(f)(5). Although he stipulated to the basic details of his offense conduct, he made no further efforts to cooperate. He failed to respond to a proffer letter sent by the government outlining the terms that would apply (*e.g.,* limited immunity) if he provided additional information. Furthermore, he did not initiate any contact with government officials offering to provide details of his involvement in drug dealing. Specifically, the government notes that Bak-

er could have at least provided the name of the "source" who sold him the crack cocaine. Before granting relief under § 3553(f), the court may reasonably require a defendant to reveal information regarding his chain of distribution. *United States v. Rodriguez*, 69 F.3d 136, 143 (7th Cir.1995); *Wrenn*, 66 F.3d at 3; *United States v. Buffington*, 879 F.Supp. 1220, 1223 (N.D.Ga. 1995).[6]

Baker argues that he should not be required to reveal information that the government did not specifically ask him to provide. As discussed previously, however, it is Baker's duty to satisfy the court that he has "truthfully provided to the Government all [of the] information and evidence ... [that he] has concerning the offense." U.S.S.G. § 3553(f)(5). Although Baker is not required to provide information that the government expressly states that it does not want, he at least must offer what he has. The district court concluded that he had not done so, and there is ample evidence to support its finding. *Cf. Rodriguez*, 69 F.3d at 143; *Wrenn*, 66 F.3d at 3; *United States v. Edwards*, 65 F.3d 430, 433 (5th Cir.1995); *United States v. Blackwell*, 897 F.Supp. 586, 589 (D.D.C.1995). At the very least, the district court did not commit clear error when it determined that Baker had not provided all of the relevant information that he possessed concerning his offense. *See Rodriguez*, 69 F.3d at 144 (question of whether defendant satisfied requirements of § 3553(f)(5) is reviewed for clear error). Baker, however, offers two additional arguments in support of the application of § 3553(f).

**B. Section 3553(f) and Acceptance of Responsibility**

■ Baker received a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.[7] The district court held

5. Accordingly, § 3553(f)(5) states that "the fact that the defendant has no relevant or useful ... information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement."

6. The government also notes that Baker attempted to minimize his role in the offense by object-

ing to paragraph 28 of the pre-sentence report, which states that Baker supplied "most" of the cocaine for the conspiracy. The district court overruled Baker's objection.

7. Baker received a two-level reduction under § 3E1.1(a) for demonstrating acceptance of responsibility and an additional one-level reduction

that Baker's stipulation to the facts of the offense qualified him for a reduction under § 3E1.1(a), which requires "truthfully admitting the conduct comprising the offense(s) of conviction." U.S.S.G. § 3E1.1, comment. (n.1(a)).[8] He argues that it is inconsistent to hold that he truthfully admitted his offense conduct under § 3E1.1(a) but did not truthfully provide all the information concerning his offense under § 3553(f)(5).

We agree with the district court that the admission of responsibility necessary to obtain a reduction under § 3E1.1(a) is not necessarily sufficient to satisfy § 3553(f)(5). Section 3553(f)(5) requires more cooperation than § 3E1.1(a): § 3553(f)(5) requires the defendant to provide "all information ... concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan," whereas § 3E1.1(a) requires that he admit "the conduct comprising the offense(s) of conviction." The distinction between the two is not insignificant. Although § 3E1.1(a) forbids a defendant from falsely denying relevant conduct, see U.S.S.G. § 3E1.1, comment. (n.1(a)), it imposes no duty on a defendant to volunteer any information aside from the conduct comprising the elements of the offense. *Id.* In contrast, § 3553(f) states that a defendant must disclose "all information" concerning the course of conduct—not simply the facts that form the basis for the criminal charge. Accordingly, the district court correctly held that § 3553(f)(5) requires more than § 3E1.1(a).

### C. Self–Incrimination

 Finally, Baker argues that requiring him to volunteer information of his criminal conduct beyond the offense of conviction violates his Fifth Amendment right against self-incrimination.[9] We do not agree that the district court violated Baker's Fifth Amendment rights by requiring him to reveal incriminating information in order to receive the benefit of § 3553(f). First, the privilege against self-incrimination is not self-executing. *Roberts v. United States,* 445 U.S. 552, 559, 100 S.Ct. 1358, 1363–64, 63 L.Ed.2d 622 (1980); *United States v. Corbin,* 998 F.2d 1377, 1390 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1124, 127 L.Ed.2d 432 (1994). Baker never informed the government or the district court that he wished to assert his Fifth Amendment rights. Thus, under *Roberts* and *Corbin,* Baker cannot claim that the denial of a reduced sentence under § 3553(f) violates his right against self-incrimination.

Moreover, requiring defendants to admit past criminal conduct in order to gain relief from statutory minimum sentences does not implicate the right against self-incrimination. In a similar line of cases, we have held that requiring a defendant to admit criminal conduct related to but distinct from the offense of conviction in order to gain a reduction for acceptance of responsibility does not implicate the Fifth Amendment. *See Ebbole v. United States,* 8 F.3d 530, 536–37 (7th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1229, 127 L.Ed.2d 573 (1994); *United States v. Wagner,* 996 F.2d 906, 915 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 720, 126 L.Ed.2d 685 (1994); *United States v. Cojab,* 978 F.2d 341, 343–44 (7th Cir.1992).[10] We

---

under § 3E1.1(b)(2) for entering a timely plea of guilty.

8. The requirements for obtaining a reduction under § 3E1.1(a) include

truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction.... A defendant may remain silent in respect to relevant conduct beyond the offense of conviction ... [h]owever, a defendant who falsely denies, or frivolously contests, relevant conduct ...

has acted in a manner inconsistent with acceptance of responsibility.

U.S.S.G. § 3E1.1, comment. (n. 1(a)).

9. Even if the federal government grants immunity to Baker, he may face subsequent state prosecutions.

10. The current version of § 3E1.1 states that a defendant need not volunteer information concerning relevant conduct in order to qualify for an acceptance of responsibility reduction. U.S.S.G. § 3E1.1, comment. (n. 1(a)). However, the *Ebbole, Wagner,* and *Cojab* courts were interpreting an old version of § 3E1.1, which did not contain this language. Prior to the amendment, defendants were required to truthfully admit "in-

reasoned in *Ebbole, Wagner,* and *Cojab* that denying the acceptance of responsibility reduction to a defendant who "fails to accept responsibility for his related criminal conduct ... is not penalizing the defendant but denying him a benefit." *Ebbole,* 8 F.3d at 535; *see also Wagner,* 996 F.2d at 915; *Cojab,* 978 F.2d at 343. The same is true of § 3553(f), which requires a defendant to provide complete and truthful details concerning his offense in order to qualify for a sentence below the statutory minimum. Thus, requiring Baker to provide the government with possibly incriminating information in order to gain a reduction under § 3553(f)(5) does not implicate his Fifth Amendment rights.

## IV. Conclusion

Arrington and Burch were properly sentenced under the provisions for "cocaine base," and the district court had no authority to depart based on the disparate impact of the enhanced penalties for crack cocaine offenses on African–Americans. In addition, Baker does not qualify for relief from the statutory minimum sentence under § 3553(f).

AFFIRMED.

volvement in the offense and related conduct" to receive a reduction for acceptance of responsibil-ity. *Cojab,* 978 F.2d at 344.