114 F.3d 1192
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael E. FUSCO, Defendant-Appellant.
 No. 96-2909.
 United States Court of Appeals, Seventh Circuit.
 Argued March 4, 1997.
Decided May 7, 1997.
 
 Before CUMMINGS, COFFEY and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 A jury found Michael E. Fusco and seven codefendants guilty of various drug-related charges; Fusco was convicted of one count of conspiracy to distribute marijuana, 21 U.S.C. § 846, one count of manufacturing marijuana, 21 U.S.C. § 841(a)(1), and two counts of maintaining an establishment for drug manufacturing, 21 U.S.C. § 856(a)(1). He was sentenced to 121 months' imprisonment.
 
 
 2
 In an earlier appeal, this court reversed and remanded for the resentencing of defendant and several codefendants on the basis that while the appeal was pending, an amendment to United States Sentencing Guidelines § 2D1.1(c), n. 5, which was to be applied retroactively, see Appendix C, amendments 516 and 536 (1995), provided a new weight calculation method which was beneficial to Fusco and could result in a modest sentence reduction. U.S. v. Ventura, et al., Nos. 95-1059, 95-1092, 95-1448, 95-1890 and 95-3795 (7th Cir. Feb. 12, 1996) (unpublished order) (remanding, pursuant to Cir.R. 57, for resentencing). On remand, Fusco's sentence was reduced by one month, to 120 months, the mandatory minimum under 21 U.S.C. § 841(b)(1)(A)(vii).
 
 
 3
 Fusco again appeals, this time on the basis that the district court should not have applied the mandatory minimum, and instead should have used the "safety valve" provided in 18 U.S.C. § 1335(f), and U.S.S.G. § 5C1.2, and that the district court erred in finding him accountable for the conspiracy's manufacturing of over 1,000 marijuana plants.
 
 I. Background
 
 4
 The drug conspiracy began in approximately June 1989, and continued through March 1992. Several coconspirators arranged for Michael J. Coffey to grow marijuana in his home in Inverness, Illinois, and later in three trailers in Carol Stream, Illinois. In March 1992, a search warrant was executed and a total of 2,600 marijuana plants were confiscated from Coffey's basement and from two of the three trailers (the third was empty). The conspirators used a procedure known as hydroponics, an indoor growing technique for cultivating marijuana.[1]
 
 
 5
 In September 1989, Fusco was recruited by his cousin, Rick Lantini, to assist in designing and building some of the rooms to be used for growing marijuana, a task that included extensive electrical and plumbing work. Fusco spent the Autumn of 1989 building the first room in the basement. He later built a third room (referred to by the parties as Room # 3) in Coffey's basement. In Summer 1991, when the operation was expanded to three semi-trailers which were purchased, insulated, air conditioned, and parked in a warehouse, Fusco designed and constructed the plumbing and electricity necessary for growing the marijuana in the trailers, also.
 
 
 6
 Initially, Fusco was to be paid a flat rate of $8,000 to $10,000, plus a percentage of the marijuana to be grown. He was paid $4,000 cash in October 1989, and $4,000 cash in December 1989. However, he then began to receive $1,000 per month as a retainer so that he would be available to perform the ongoing electronic, plumbing, and other maintenance work on the rooms and trailers.
 
 II. The Safety Valve
 
 7
 In 1994, Congress responded to complaints that mandatory minimums were not compatible with the Sentencing Guidelines by enacting a "safety valve" provision, codified at 18 U.S.C. § 3553(f), mandating that the Sentencing Commission establish a provision, now included in U.S.S.G. § 5C1.2, permitting district courts to disregard statutory minimum sentences if the court finds that a defendant satisfies certain indicators of reduced culpability: (1) defendant has no more than one criminal history point; (2) defendant "did not use violence or credible threats of violence or possess a firearm or other dangerous weapon"; (3) the offense did not result in death or serious bodily injury; (4) defendant was not a leader or organizer of the offense; and (5) defendant fully cooperated with the government. See generally Fred A. Bernstein, "Discretion Redux: Mandatory Minimums, Federal Judges, and the 'Safety Valve' Provision of the 1994 Crime Act," 20 U. Dayton L.Rev. 765 (Winter 1995).
 
 
 8
 In the present case, the district court found that failure to meet the fifth criterion precluded Fusco from receiving the benefit of the safety valve provision. The court specifically found that Fusco had not fully cooperated with the government. On appeal, this court reviews the district court's interpretation of the sentencing guidelines de novo and its factual findings for clear error. United States v. Ramirez, 94 F.3d 1095, 1099 (7th Cir.1996). The question of whether Fusco is eligible for a reduction in sentence under § 5C1.2 is reviewed for clear error. Ramirez, 94 F.3d at 1100.
 
 
 9
 In regard to the fifth criterion, full cooperation with the government, Fusco makes two points: (1) he told all he knew; and (2) the government sought information about unrelated offenses. In response, the government does not argue that Fusco failed to give enough information--it argues that he gave the government no information.[2]
 
 
 10
 Section 5C1.2 of the Guidelines provides that a defendant, by the time of sentencing, must truthfully provide "all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination ... that the defendant has complied with this requirement." U.S.S.G. § 5C1.2.
 
 
 11
 The district court here denied Fusco's request to apply the fifth criterion of the safety valve provision, and explained:
 
 
 12
 The safety valve, which I would like to utilize to help Mr. Fusco because ten years is a hideously long sentence for a relatively young man with a nice family--I can't use it because.... there is simply not, on the basis of this record, evidence that Mr. Fusco leveled with the government as to his role in the offense and, therefore, on that basis alone, he doesn't qualify. (S.Tr. 136)
 
 
 13
 Fusco never admitted to committing even the conduct for which he was convicted. He testified at trial that he knew nothing about the marijuana operation until it was too late to back out, and he was then coerced into continuing his work. At sentencing, he still refused to admit knowing about the marijuana or participating beyond the role of innocent "handyman." He submitted a written statement to the court indicating that he was initially hired by Coffey to work on a computer system project. He was paid $10,000 to make four electrical panels. In December 1989 he installed the panels in Coffey's basement. In April 1990, he installed another panel and, explained Fusco, he was then surprised to learn that Coffey and others were growing marijuana. "I told him I wanted nothing further to do with it." He further maintained that Coffey and the others coerced him into continuing with the project and not informing the police, and in December 1991, Coffey coerced him into performing work in the trailers, also. Fusco denied being a partner, receiving any profits, planting or harvesting marijuana, or investing money in the scheme.
 
 
 14
 Fusco told this "same story to the jury which ... acted rationally in rejecting it and convicting" him. United States v. Thompson, 106 F.3d 794, 801 (7th Cir.1997) ("defendants continued to cling to a false version of events and dispute their own culpability, up to and including the sentencing hearing, [which] is a sufficient basis for refusing to invoke the safety valve provision. Denying involvement is not the same as lacking useful information. It would be illogical if defendants could use the very story which led to their conviction as a means of obtaining a reduced sentence."). In his brief on appeal, Fusco maintains this same position.
 
 
 15
 It is true that the very purpose of the safety valve was to assist defendants who worked on the lower levels of drug conspiracies, and "had no new or useful information to trade." United States v. Arrington, 73 F.3d 144, 147 (7th Cir.1996). And, according to Fusco, he has no useful information to give the government.
 
 
 16
 Even if Fusco is "less knowledgeable than other codefendants," he must "nevertheless [be] willing to provide all the information he has." Ramirez, 94 F.3d at 1099. Fusco has never made even the minimally required good faith attempt to cooperate. Section 3353(f) "was intended to benefit only those defendants who truly cooperate. Thus, to qualify for relief under § 3353(f), a defendant must demonstrate to the court that he has made a good faith attempt to cooperate with the authorities." Arrington, 73 F.3d at 148. Fusco did not just fail to give useful or relevant information; he gave no information at all. "[H]e at least must offer what he has." Arrington, 73 F.3d at 148. See also Thompson, 106 F.3d at 800 (no clear error in refusing to apply the safety valve provision, notwithstanding defendants' claim that they had told the government everything they knew and that they were "mere dupes who were connived into transporting the marijuana, and therefore knew little about the drug ring").
 
 
 17
 Fusco argues that it is unfair to rest on the representation of someone who was not a sworn witness; that the prosecutor's representation lacked detail and corroboration; and that he was "in the position of having to establish a negative proposition." (Appellant's Brief, p. 23) This is a credibility question that would be difficult, if not impossible, for a reviewing court to disturb on this record. See Thompson, 106 F.3d at 800 (sentencing court is entitled to find statements of prosecutor credible, and "we defer on appeal to his findings on credibility"), citing United States v. Rodriguez, 69 F.3d 136, 144 (7th Cir.1995). See also Ramirez, 94 F.3d at 1102-03 ("district court's decision to deny a defendant's § 5C1.2 motion is a heavily fact-bound one," requiring a weighing of credibility as to "defendant's full and honest disclosure"). The district court was entitled to believe the prosecutor's representation that Fusco had not cooperated in disclosing any information (useful or not), a position corroborated by his own position throughout the trial and sentencing proceedings.
 
 
 18
 We hold that there was no clear error in the district court's finding that it could not use the safety valve, given Fusco's failure to provide the relevant information he possessed.
 
 
 19
 In a related argument, Fusco contends that the information sought by the government was collateral to the conspiratorial crimes for which he was convicted. See Arrington, 73 F.3d at 147 n. 4, 149 (the information defendant is to provide to the government must be part of the same course of conduct or of a common scheme or plan). Fusco argues that there is "no reason why a handyman would know about financing arrangements and far-flung spokes of the relevant conspiracy's wheel." (Appellant's Brief, p. 24) It is not clear what information the government hoped Fusco could provide; perhaps it had no idea what he might know. In any event, it got nothing from Fusco, and therefore he has nowhere to go with the argument that the government wanted only collateral information. Cf. United States v. Gambino, 106 F.3d 1105, 1111 (2d Cir.1997) (discussing how far beyond offense conduct defendant's disclosures to government may be required to extend, using § 1B1.3(a) definition of relevant conduct).
 
 III. Foreseeable Amount of Marijuana Plants
 
 20
 Fusco next contends that he should not be held accountable for 1,000 or more marijuana plants, because he could not have foreseen that the conspiracy was so broad. He portrays himself as a mere "handyman" who was not involved in the growing or "manufacture" of marijuana, but instead was only performing some basic maintenance work unaware of the activities going on around him.
 
 
 21
 This Circuit has held that foreseeability is relevant only if the defendant was not personally involved in the relevant conduct for which he is held accountable. United States v. Velasquez, 67 F.3d 650, 654 (7th Cir.1995) ("reasonable foreseeability is irrelevant when the defendant was a direct participant in the relevant transaction"); United States v. Corral-Ibarra, 25 F.3d 430, 438 (7th Cir.1994) ("the quantity of drugs that was reasonably foreseeable to [defendant] is legally irrelevant to the computation of his base offense level under the applicable Sentencing Guidelines"; indeed, the "critical distinction is between direct and remote involvement in the illegal activity because only the latter will trigger a reasonable foreseeability analysis"). Accord United States v. Chalarca, 95 F.3d 239, 243-44 (2d Cir.1996) ("the quantity of drugs attributed to a defendant need not be foreseeable to him when he personally participates, in a direct way, in a jointly undertaken drug transaction"); United States v. McCullah, 76 F.3d 1087, 1105-06 (10th Cir.1996) ("by directly participating in the drug recovery scheme, [defendant] is responsible for the entire quantity of drugs sought to be recovered regardless of reasonable foreseeability"), pet'n for cert. filed, No. 96-6841 (U.S. Nov. 22, 1996).
 
 
 22
 This is not the type of case where the defendant was directly involved in every aspect of the conspiracy, particularly the financial aspects. But Fusco was very much involved in essential activities at both growing sites (the basement and the trailers), from the initial design and building, to the ongoing maintenance of the sites. In fact, the district court found that it could potentially hold Fusco accountable for all 12,750 plants raised by the conspirators over the entire span of the conspiracy. We find that sufficient evidence supports the district court's finding that Fusco could reasonably foresee that more than 1,000 plants were involved in the conspiracy.
 
 
 23
 Although there was evidence that Fusco had an investment in the crop being grown in Room Three at Coffey's home, he argues that he did not know how many plants were being grown in that room: "[T]here is no support for charging [defendant] with knowledge of what was growing in Room Three" because all he did in that room was "merely set up some circuit boxes." (Appellant's Brief, p. 31) Fusco also argues that, even if he knew there were 275 plants growing in Room Three, he had no idea how many plants other conspirators were growing elsewhere. (Appellant's Brief, p. 32) But the jury did not believe Fusco's version of his role in the conspiracy. Significantly, it found him guilty of actually manufacturing marijuana (Count II), not merely conspiring to manufacture and distribute marijuana. The evidence shows, and the jury believed, that Fusco was involved in the manufacturing process. In Fall 1989, he helped set up Room One in Coffey's basement. In 1990, he set up Room Three. In Fall 1991, he planned the design for the trailers; and in December 1991 and January 1992, he built the interior of the trailers. And Fusco did not merely show up to install equipment, spending only a few hours at the sites of the growing rooms; indeed, he was kept on a retainer so that he could be on-call 24 hours a day for the maintenance difficulties encountered in growing the marijuana indoors. Moreover, it would have been difficult for Fusco to miss the fact that this was not a small operation; during the life span of the conspiracy, a total of 10,000 to 12,750 marijuana plants were grown.
 
 
 24
 In addition, evidence in the record includes handwritten statements made by Mike Coffey, and submitted to the sentencing judge, indicating that Fusco planted and harvested the crop in Room Three, and took samples from the other rooms:
 
 
 25
 Mike Fusco planted and tended to the entire first crop of Rm # 3. This included cutting clones, planting close in rockwool, planting clones in Rms # 3. He also took responsibility for the upkeep and care of plants in Rm # 3 during that first planting. He also by himself, harvested and bagged up Rm #3's first crop. He also gave Lantini some sample of the marijuana from the other rooms. (Emphasis added.)
 
 
 26
 In contrast to his depiction of his role as a handyman, Fusco admits in his brief the importance of the electrical work, referring to the electrical work as the "substantial hydroponic infrastructure necessary to maintain the plants." (Appellant's brief, p. 35) Nevertheless, he argues that his work on the electricity and infrastructure does not support a finding that he knew how many plants might be grown in the trailers. "[C]learly a trailer is different from a room and experience with one does not translate to the other." (Id.) But even if Fusco thought each of the three rooms contained 275 plants, and each of the three trailers contained 275 plants, the total growing in the six locations would be 1,650 plants--far more than the 1,000-plant limit he seeks to avoid.
 
 IV. Conclusion
 
 27
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Instead of soil and sunlight, rockwool soaked in water and electric lights are used to grow the plants
 
 
 [2]
 The government stated at sentencing that it would be "pleased ... at some point to bring a Rule 35 motion for reduction of sentence due to the defendant's subsequent cooperation with the government." S.Tr. 138. The prosecutor pointed out that it had to be done within one year: "So if the defendant wants to search his conscience and decides that he owes it to his family and owes it as his duty as a citizen to come forward and meet with the government and be debriefed, he should do it promptly." S.Tr. 138