NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 23, 2009
Decided February 11, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 07-2808

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>FERMIN RODARTE,<br>*Defendant-Appellant*. | Appeal from the United States District<br>Court for the Northern District<br>of Illinois, Eastern Division.<br><br>No. 04 CR 1029<br><br>Robert W. Gettleman,<br>*Judge*. |

**O R D E R**

In November 2004, a confidential source (source) informed Drug Enforcement Agency (DEA) officials that he had discussed a multi-kilogram cocaine deal with one Fermin Rodarte, whom he had met at Hawthorne Racetrack in Chicago. After conducting an investigation into Rodarte, the DEA equipped the source with a recording device. During a recorded telephone conversation, Rodarte told the source that he was in the cocaine business with his sisters, Maria Magana and Marielana Martinez.

On November 23, 2004, Rodarte and Margana met with the source at a parking lot to arrange the transaction. No deal was consummated on that occasion, but they agreed to meet at a later time. Two days later, Rodarte contacted the source to tell him that he was ready to

proceed with the deal. Rodarte, accompanied this time by Martinez, traveled in Martinez' vehicle to a prearranged location. When they arrived, the source entered the rear passenger side of Martinez' vehicle; Rodarte told him that he would find the cocaine in a Tide detergent box in the vehicle's rear. Although Rodarte and the source had agreed to a six-kilogram transaction, the detergent box held approximately two kilograms. The source asked Rodarte and Martinez where the remaining cocaine was, and Martinez assured him that it was nearby. The source then signaled DEA agents, who arrested Rodarte and Martinez. Later, agents searched Magana's residence, where they recovered four and one-half kilos of cocaine, drug-weighing scales and drug-cutting devices.

Rodarte, Martinez, and Magana were indicted for (1) conspiracy to possess and distribute 500 or more grams of cocaine; (2) possession with intent to distribute two kilograms of cocaine; and (3) possession with intent to distribute three kilograms of cocaine.

On April 11, 2006, Rodarte pleaded guilty to Count One of the indictment. In the plea agreement, Rodarte admitted that: he had engaged in a conspiracy with intent to distribute 500 grams or more of cocaine with his sisters, Magana and Martinez; he brought two kilograms of cocaine with him to the arranged drug deal with the source, but approximately four kilograms of cocaine remained in Magana's home; and the agents had recovered the additional four kilograms of cocaine from Magana's residence. In total, Rodarte admitted that he and his co-defendants possessed approximately 6,500 grams of cocaine.

During his plea colloquy, Rodarte acknowledged that the conspiracy involved at least five kilograms, but less than fifteen kilograms of cocaine and that, should he be found ineligible for the safety valve exception, he was subject to a statutory mandatory minimum sentence of ten years' imprisonment.

A Presentence Investigation Report (PSR) concluded that Rodarte was not safety valve eligible based on untruthful statements that he made to the government regarding the drug conspiracy. The PSR found that Rodarte denied being in a drug business with his sisters, attempted to minimize Magana's role in the case, and falsely stated that Martinez had no involvement in the drug deal or any knowledge that Rodarte was involved in a deal.

The district court found that there were more than five kilograms involved in the offense and sentenced Rodarte to ten years' imprisonment. The court also found that although Rodarte accepted responsibility for his crime, he was not eligible for the safety valve.

On appeal, Rodarte first contends that the district court erred in finding that he was ineligible for the safety valve, which allows certain first-time offenders to be sentenced below an otherwise mandatory statutory minimum if they meet certain requirements. *See* 18 U.S.C.

§ 3553(f). Our review of the district court's findings concerning the factual predicates for the safety valve is for clear error only. *United States v. Alvarado*, 326 F.3d 857, 860 (7th Cir. 2003).

In order to qualify for the safety valve, a defendant must meet five requirements. The only one at issue in this case is the fifth requirement that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5).

In his oral post-plea safety valve interview, Rodarte lied extensively about his sisters' involvement in the drug conspiracy; in fact, he denied the existence of a conspiracy and claimed that he was the sole actor in the cocaine ring. The government then provided Rodarte a second opportunity to set the record straight, arranging an interview between Rodarte and federal agents at the Wisconsin penitentiary where he was held. Rodarte refused to meet with the agents, telling them only that he had nothing more to say. Then, three days before his sentencing, he wrote a letter to the government in which he recanted many of the lies he told during his verbal proffer, admitting that his sisters were not only aware of the drug transaction, but were active participants in it. The district court found Rodarte's attempt to come clean to be "too little, too late."

Latching on to these words, Rodarte asserts that a defendant can elect to cooperate with the government concerning his knowledge of the crime up until the point of sentencing and argues that the district court erred by failing to adequately weigh his eleventh hour disclosure.

Rodarte is correct that a defendant's window for cooperating with the government is open until the time of sentencing. However, it is the substance rather than the timing of Rodarte's disclosure which dooms his safety valve eligibility challenge.

Rodarte's letter was not a complete accounting of the offense. The letter failed to provide any detail concerning his sisters' roles in the crime beyond that contained in the plea. Moreover, the government notes that Rodarte did not divulge the name of his supplier. Before granting relief under § 3553(f), the court may require a defendant to reveal information regarding his chain of distribution. *United States v. Arrington*, 73 F.3d 144, 148 (7th Cir. 1996). Rodarte was obligated to provide all known information concerning his course of conduct, not just conduct comprising the criminal charge. Although he provided truthful information in place of many of the lies he earlier had told, Rodarte failed to carry the burden of proving that he had fully and truthfully cooperated with the government. We find no clear error in the court's refusal to grant Rodarte the safety valve adjustment.

Rodarte next argues that the district court erred when it imposed the ten-year statutory mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A) because the count in the indictment to which he pleaded guilty carried only a five-year mandatory minimum sentence. We review the district court's determination for clear error. *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007).

In Rodarte's plea agreement, he acknowledged that, in addition to the two kilograms of cocaine he transported to the drug deal on the day of his arrest, four kilograms of cocaine remained in Martinez' home. He further agreed that the offense of conviction carried a mandatory minimum sentence of 120 months' imprisonment. However, at sentencing, Rodarte argued that the five-year mandatory minimum sentence should apply because he had only pleaded guilty to a conspiracy to possess with intent to deliver 500 grams or more of cocaine. He advances this argument again on appeal, claiming that the district court improperly considered relevant conduct in reaching its decision to apply the ten-year mandatory minimum sentence.

The argument is without merit. Rodarte was criminally responsible for the aggregate amount of drugs comprising the entire conspiracy, not just that which he carried to the transaction that preceded his arrest. The district court made a factual finding, by a preponderance of the evidence, that the drug conspiracy to which Rodarte pleaded guilty involved five or more kilograms of cocaine. In light of that finding, Rodarte's ten-year sentence was mandatory. The district court did not look beyond the conduct that actually resulted in Rodarte's conviction; rather, it simply considered the conduct Rodarte claimed responsibility for by entering his plea. Rodarte was properly sentenced according to the Sentencing Guidelines and no error occurred.

## CONCLUSION

For the reasons stated above, we AFFRIM Rodarte's conviction and sentence.