UNITED STATES of America,
Plaintiff–Appellee,

v.

Tomas RODRIGUEZ, Defendant–
Appellant.

No. 94–3935.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1995.

Decided Oct. 23, 1995.

Barry Rand Elden, Asst. U.S. Atty., Collen Coughlin (argued), Office of the U.S. Attorney, Criminal Appellate Division, Chicago, IL, for plaintiff-appellee.

Alexander M. Salerno, Berwyn, IL, argued for defendant-appellant.

Before COFFEY, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

After entering a conditional plea of guilty to an indictment charging him with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), Tomas Rodriguez now appeals his conviction. He challenges the legality of the arrest and search that led to his indictment, the district court's determination of his suppression motion without a hearing, and the district court's application of the sentencing guidelines in determining his sentence. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. *Facts*

On June 21 and 22, 1994, Tomas Rodriguez flew from Los Angeles to Chicago's O'Hare International Airport with a stopover in Las Vegas. On the morning of June 22, agents of the Drug Enforcement Agency ("DEA") and the United States Customs Service received a tip from a confidential informant that Mr. Rodriguez would be arriving at O'Hare that morning and that he had purchased his one-way ticket with cash. Acting on this information, two officers assigned to the DEA Airport Task Force met Mr. Rodriguez' flight and observed his activities upon arrival.

When Mr. Rodriguez arrived at the gate in Chicago, he began looking nervously around the terminal. According to the agents, he appeared to be engaging in counter-surveillance. The agents then followed him to the baggage claim area and observed as Mr. Rodriguez waited until all the other passengers from his flight had retrieved their luggage before he claimed his own bag.[1]

As Mr. Rodriguez walked toward the exit of the airport, one of the agents approached Mr. Rodriguez and identified himself as a law enforcement officer. Mr. Rodriguez agreed to answer a few questions; he confirmed his name for the agent and the flight upon which he had just arrived. Also upon request, he produced his airline ticket and verified his ownership of the bag he had just retrieved. In the view of one of the officers, Mr. Rodriguez became "extremely nervous" during the course of the encounter.

The agent then asked for Mr. Rodriguez' consent to search his luggage. When Mr. Rodriguez agreed, he and the agent moved away from the doorway, and Mr. Rodriguez opened his bag. In the bag agents observed two brick-shaped packages, each of which subsequently was found to contain a kilogram of cocaine.

### B. *Proceedings in the District Court*

Mr. Rodriguez, through counsel, filed a motion seeking additional discovery and a motion to quash his arrest and suppress evidence. The district court initially granted the motion for additional discovery and set for hearing the motion to suppress. Upon the government's motion for reconsideration, however, the district court vacated its order scheduling a suppression hearing and denied defendant's motion to quash the arrest and suppress evidence. As a result of the district court's ruling, Mr. Rodriguez' request for additional discovery was rendered moot.

---

1. Mr. Rodriguez, in support of his motion to quash his arrest and suppress evidence, submitted an investigator's interview with an airline baggage handler. According to the interview, Mr. Rodriguez' bag was placed last on the baggage carousel at the request of a government agent. *See* textual discussion, *infra*.

The district court took the view that Mr. Rodriguez had not met his burden of making the prima facie showing of illegality necessary to entitle him to a suppression hearing. Noting that Mr. Rodriguez' motion focused on events leading up to the encounter, the court found that the record, on its face, supported a finding that the actual encounter and subsequent search was consensual.

The district court addressed Mr. Rodriguez' claim that his consent was not given voluntarily but was instead the product of trickery by officers specially trained to obtain waivers of constitutional rights. The court stated that he had not supported these allegations with definite, specific, detailed, and nonconjectural facts. Characterizing Mr. Rodriguez' allegations of illegality in this manner, the court determined that a hearing on the motion to suppress was not required.

Turning to the merits of the motion, the court determined that the lack of sufficient evidence to require a hearing on the motion to suppress foredoomed the motion itself. In reaching this conclusion, the court relied on the objective test of *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980): "[A] person has been 'seized' within the meaning of the Fourth Amendment ... only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 554, 100 S.Ct. at 1877. The district court took the view that, under *Mendenhall,* the airport encounter did not rise to the level of a "seizure." To determine whether the search was consensual, the district court applied the factors set forth in *United States v. McCarthur,* 6 F.3d 1270, 1276 (7th Cir.1993), and found that Mr. Rodriguez had voluntarily consented to the search.

The district court rejected Mr. Rodriguez' argument that his consent had been obtained through subtle psychological coercion employed by officers specially trained to employ such tactics. The district court held that, because the test is an objective one, and the focus is on what a reasonable suspect would have felt free to do, the agents' subjective motivation and training are immaterial. The court found no evidence in the record to support the conclusion that Mr. Rodriguez had not voluntarily consented to the search.

On September 1, 1994, the district court accepted Mr. Rodriguez' conditional plea of guilty to the indictment. Prior to sentencing, Mr. Rodriguez petitioned the district court to sentence him below the statutory mandatory minimum as permitted by § 5C1.2 of the Sentencing Guidelines. At sentencing, however, the district found that Rodriguez had not furnished all the information within his knowledge concerning the offense, as required for downward departure under § 5C1.2, and sentenced him to the statutory minimum five years' imprisonment.

## II

## DISCUSSION

### A. *Denial of Hearing*

We first address whether the district court properly denied Mr. Rodriguez' motion to quash his arrest and suppress evidence without an evidentiary hearing.

Mr. Rodriguez characterizes the June 22 encounter at O'Hare as a "seizure" of his person as that term is employed in our Fourth Amendment jurisprudence. He contends that his rights were violated because the agents lacked reasonable suspicion or other articulable basis that would justify their approaching and detaining him. *See Terry v. State of Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968). In support of this contention, Mr. Rodriguez tendered an affidavit and investigator's report to establish: 1) that the officers could not have known that he purchased his one-way ticket with cash; and 2) that his luggage was placed last on the baggage carousel at the request of the government.

Mr. Rodriguez first offered the affidavit of Ms. Verity McGregor, the travel agent who had sold him the airline ticket to Chicago. In her affidavit, Ms. McGregor stated that she was not the confidential informant who provided information about Mr. Rodriguez' travel plans or ticket purchase to law enforcement personnel in Chicago. The second document offered by Mr. Rodriguez is the report of Thomas C. Scrivener, an investiga-

tor with the Federal Defender Program, summarizing interviews his office conducted with baggage handlers for Mr. Rodriguez' flight. The report indicates that one of the baggage handlers, Scott Mattson, told the investigator that he had been approached by a large agent and instructed to look out for a particular bag. After Mr. Mattson found the luggage, according to the report, the agent then asked him to place the luggage on the conveyor belt last.

According to Mr. Rodriguez, these documents establish that the agents could not have had any valid ground to detain him; the encounter, therefore, violated his rights under the Fourth Amendment. Because Mr. Rodriguez characterizes the airport encounter as a nonconsensual stop,[2] he contends that he met his burden of making a prima facie showing of illegality in the district court and was thus entitled to additional discovery and an evidentiary hearing to develop his allegations.

The government takes a decidedly different view of the matter. It contends that the Fourth Amendment was not implicated by the encounter leading up to Rodriguez' arrest. In its view, the objective, uncontested facts with respect to the encounter—the circumstances under which Mr. Rodriguez was approached, the questions asked by the agent and the answers given by Mr. Rodriguez—establish that the consent was voluntary and that no coercion took place. The government emphasizes that Rodriguez' subjective feeling that he was not free to leave is irrelevant under the objective *Mendenhall* test. It further argues that the district court correctly applied the *McCarthur* factors and concluded that the search was voluntary and non-coercive. As such, concludes the government, the encounter was not a "seizure" subject to the strictures of the Fourth Amendment. Mr. Rodriguez' efforts to establish that the agents lacked reasonable suspicion to detain him are, therefore, ineffectual to impeach the holding of the district court.

### 1. Standard of Review

■ This circuit has not had occasion to state definitively the applicable standard of appellate review when scrutinizing a district court's determination that a hearing is unnecessary on the issue of whether an individual's encounter with police amounts to a "seizure." As the government suggests, however, this situation involves many of the same concerns we confronted in *United States v. Pace*, 898 F.2d 1218 (7th Cir.), *cert. denied*, 497 U.S. 1030, 110 S.Ct. 3286, 111 L.Ed.2d 795 (1990). In that case, we held that a decision as to whether a hearing was necessary to determine whether false statements had been submitted intentionally or recklessly in support of a warrant, *see Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), is reviewed under the clearly erroneous standard. *Pace*, 898 F.2d at 1227. The same considerations that led us to that conclusion must guide our decision today. In *Pace*, we noted that the determination at issue, which requires a court to sift through the evidentiary submissions of the parties and to assess the various inferences that may be drawn plausibly from that material, is one that a tribunal habituated to the methodologies of fact-finding can perform most efficiently and with relatively little chance that a more searching review on our part would produce a more correct result. *Id.* As a matter of judicial economy, therefore, it was appropriate to assign prime responsibility for this function to the trial court. We also noted that the decision being reviewed in *Pace*, although implicating an important constitutional right, does not affect directly the ultimate issue of the guilt or innocence of the defendant.

Having reached the result that we did in *Pace*, we believe that considerations of consistency in approach require that we follow the same path today. Of course, as Judge Manion emphasized for the court in *Pace*, "[r]eview for clear error does not mean no review." *Id.* We still have the obligation to review the record and to reverse the decision of the trial court when we are left with the definite and firm conviction that an error has been committed. *Id.*

---

2. In support of this characterization, Mr. Rodriguez points to his own affidavit in which he states that he did not feel free to terminate his encounter with the agents.

## 2. Necessity of a Hearing

 Upon examination of the record, we cannot say that the district court reached a clearly erroneous appraisal of the evidence in determining that there was no need for an evidentiary hearing on the issue of Mr. Rodriguez' consent. At the outset, we note that Mr. Rodriguez had the burden of establishing the necessity of a hearing. *United States v. Woods*, 995 F.2d 713 (7th Cir.1993); *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir.1992). That burden could be met only upon the presentation of "definite, specific, detailed, and nonconjectural" facts. *Randle*, 966 F.2d at 1212 (quoting *United States v. Hamm*, 786 F.2d 804, 807 (7th Cir.1986)). To warrant a hearing, the defendant's submission must demonstrate that there is a disputed material issue of fact. *Woods*, 995 F.2d at 715–16.

In the district court and again in his appellate brief, Mr. Rodriguez sets forth the basis of his belief that the agents lacked reasonable suspicion to stop him against his will. These circumstances are immaterial, however, to the issue of whether he voluntarily consented to speak with the agent during the actual encounter. On this question, there is no dispute that requires a hearing; the facts surrounding the actual encounter are uncontroverted. The record clearly shows that the agent merely accosted him in a public place, identified himself as a federal law enforcement agent, and asked Mr. Rodriguez if he would speak with him. Our cases make clear that a trial court may properly characterize an encounter of this kind as consensual.

 Not all encounters between the police and citizens implicate the Fourth Amendment's prohibition on unreasonable searches and seizures. *Terry*, 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16. As this court noted in *United States v. Johnson*, 910 F.2d 1506 (7th Cir.1990), *cert. denied*, 498 U.S. 1051, 111 S.Ct. 764, 112 L.Ed.2d 783 (1991), the Supreme Court has discussed the degree of suspicion required, in the context of the Fourth Amendment, for three categories of police-citizen encounters:

> The first category is an arrest, for which the Fourth Amendment requires that police have probable cause to believe a person has committed or is committing a crime. The second category is an investigatory stop, which is limited to a brief, non-intrusive detention. This is also a Fourth Amendment "seizure," but the officer need only have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime. The third category involves no restraint on the citizen's liberty, and is characterized by an officer seeking the citizen's voluntary cooperation through non-coercive questioning. This is not a "seizure" within the meaning of the Fourth Amendment.

*Id.* at 1508 (citations omitted); *United States v. Withers*, 972 F.2d 837, 841 (7th Cir.1992); *see also United States v. Montoya de Hernandez*, 473 U.S. 531, 541, 105 S.Ct. 3304, 3310–11, 87 L.Ed.2d 381 (1985). With regard to the third category, the consensual encounter, "the degree of suspicion that is required is zero." *Withers*, 972 F.2d at 841 (quoting *United States v. Serna–Barreto*, 842 F.2d 965, 966 (7th Cir.1988)); *see Mendenhall*, 446 U.S. at 557–58, 100 S.Ct. at 1878–79.

 We apply an objective standard to determine whether an airport encounter between a citizen and police amounts to a "seizure." *See Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877. The determination of whether an encounter is voluntary is made on the basis of all relevant circumstances and includes consideration of psychological factors. *McCarthur*, 6 F.3d at 1276. If a reasonable person would have felt free to disregard the police and go about his business, *see Florida v. Bostick*, 501 U.S. 429, 431–34, 111 S.Ct. 2382, 2384–86, 115 L.Ed.2d 389 (1991); *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the encounter is consensual.

 Although this inquiry is highly fact-specific and requires a court to view the facts and circumstances confronting each individual in their totality, certain frequently recurring police encounters have been addressed by this court. Our cases have made it clear that the police do not violate the Fourth Amendment merely by approaching a person in an airport and asking routine ques-

tions, including those relating to identification, airline ticket information, and the nature and length of recent air travel. *Johnson,* 910 F.2d at 1509; *United States v. Edwards,* 898 F.2d 1273, 1276 (7th Cir.1990). Although the lengthy retention of documents such as identification and airline tickets is a factor in determining whether a stop has occurred, *see United States v. Notorianni,* 729 F.2d 520, 522 (7th Cir.1984), "[t]he mere request for and voluntary production of [driver's licenses and airplane tickets] does not constitute a seizure, but rather falls into the category of a non-coercive police-citizen encounter." *United States v. Sterling,* 909 F.2d 1078, 1083 (7th Cir.1990) (alteration in original). Nor can the mere request for consent to search a suspect's luggage "be deemed a per se paralyzing communication that escalates every consensual encounter into a Terry stop." *United States v. Williams,* 945 F.2d 192, 197 (7th Cir.1991).

Mr. Rodriguez surmises, nevertheless, that the agents may have participated in police training programs and have been taught how to interview suspects so as to procure consent to a search. These allegations, however, amount to nothing more than speculation—speculation that, even if proven, would not, standing alone, justify a result other than the one reached by the district court.

On the record before us, then, and in the light of established circuit precedent, we cannot say that the district court committed clear error in finding that Mr. Rodriguez failed to make the prima facie showing of illegality required to entitle him to a hearing on his motion to suppress.[3]

### B. *Motion to Suppress*

The same considerations that governed our determination that the district court did not commit clear error in denying Mr. Rodriguez a hearing require us to conclude that the court did not err in denying Mr. Rodriguez' motion to suppress.

3. Mr. Rodriguez cites numerous cases for the proposition that "mere acquiescence to police authority does not amount to voluntary consent to be questioned or seized." The cases to which he invites our attention, however, involve facts far more extreme than those presented here. *E.g., United States v. Jones,* 641 F.2d 425 (6th

The district court's determination that the encounter between the agents and Mr. Rodriguez was consensual, and thus did not need to be justified by any degree of articulable suspicion, is amply supported by the record. There is no indication that Mr. Rodriguez' consent was induced by coercive police conduct. Mr. Rodriguez was approached by a single agent in a nonconfrontational manner; the agent was dressed in plain clothes and did not display any weapons. The agent identified himself and requested permission to speak with Mr. Rodriguez. Nothing about the agent's conduct indicates Mr. Rodriguez' consent was other than voluntarily given. Nor were the physical surroundings isolating or restraining. The encounter took place in a busy public concourse at O'Hare airport, surrounded by travellers. *See United States v. High,* 921 F.2d 112, 116 (7th Cir.1990) (busy railroad terminal); *Sterling,* 909 F.2d at 1083 (airport baggage claim area). As the district court correctly found, Mr. Rodriguez moved away from the door, so that the search might be conducted, only after he had already consented to the search of his bag.

The record supports a determination that the circumstances of Mr. Rodriguez' encounter with the agent, viewed in their totality, would have communicated to a reasonable person that he was free to end the questioning and to continue on his way. *McCarthur,* 6 F.3d at 1276; *Bostick,* 501 U.S. at 431–34, 111 S.Ct. at 2384–86; *Hodari D.,* 499 U.S. at 627–28, 111 S.Ct. at 1551–52. The district court's denial of the suppression motion, therefore, was not clearly erroneous.

### C. *Sentencing*

We now turn to Mr. Rodriguez' challenge to the sentence imposed by the district court. We must determine whether the district court properly denied Mr. Rodriguez the downward departure authorized by § 5C1.2

Cir.1981) (suspect confronted in her own home by five police officers with their guns drawn); *United States v. Marshall,* 488 F.2d 1169 (9th Cir.1973) (police entered home with their guns drawn); *Harless v. Turner,* 456 F.2d 1337 (10th Cir.1972) (police roused defendant from his bed in the middle of the night).

and sentenced him to the mandatory minimum sentence. That section provides:

> In the case of an offense under 21 U.S.C. § 841, 844, 846, 960, or 963, the court shall impose a sentence in accordance with the applicable guideline range without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)–(5) set forth verbatim below:
>
> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threat of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2. The district court, finding that Mr. Rodriguez had not met the requirement found in § 5C1.2(5), refused to sentence him below the mandatory minimum sentence.

Mr. Rodriguez argues that he did provide the government with all the information he had concerning his offense. He pleaded guilty, and "did not flinch before the Court in accepting responsibility" when telling the court what he did. Appellant's Br. at 17. He takes issue with statements made by the district court during sentencing in which the court pointed out that Mr. Rodriguez had not identified the person who gave him the cocaine in Los Angeles or the person to whom he intended to give the cocaine in Chicago. In his view, this failure ought not disqualify him from a reduction under § 5C1.2 because the court held no hearing on the issue and made no finding that such other persons existed. Moreover, Mr. Rodriguez argues, he could have intended to distribute the cocaine to individuals unknown to him at the time of his arrest.

The government points out that Mr. Rodriguez neither requested a hearing nor presented his "then-unknown distributee" argument in the district court. In any event, the government argues, the district court's determination is not clearly erroneous. The government contends that the record is devoid of any statements by the defendant giving information about the offense other than: 1) the plea agreement containing the factual basis for the offense; and 2) a handwritten statement of remorse provided to the probation department. These statements, the government argues, are insufficient to satisfy § 5C1.2(5).

The district court's statement at sentencing, the government argues, is just an example of the type of information that Mr. Rodriguez did not provide; it was not the sole basis for disallowing the downward departure. Whether the defendant knew the identities of those from whom he had received the cocaine or to whom he was to deliver it is irrelevant to the court's finding. Mr. Rodriguez' ineligibility for the reduction is based on the fact that he produced *no* information concerning the offense; if he did not know the identities of such persons, then he at least should have communicated that fact to the government in order to qualify for the reduction. Emphasizing that Mr. Rodriguez has not fulfilled § 5C1.2's requirement of providing "*all* information ... the defendant has" concerning the offense, U.S.S.G. § 5C1.2(5) (emphasis added), the government lists additional information, obviously within his knowledge, that could have been provided to the authorities: who paid for his airline ticket, where he had picked up the cocaine, how he was planning to leave the airport, etc.

■ We believe that the district court's determination that a defendant is not eligible for the reduction permitted by § 5C1.2 ought to be governed by the clearly erroneous standard. The court's determination is a fact-specific one and will often depend on credibility determinations that cannot be replicated with the same accuracy on appeal. An examination of the record makes clear that the district court was of the view that the defendant "did not furnish all the information that was obviously within his knowledge." Sent.Tr. at 4. Noting that Mr. Rodriguez was eighteen years of age and without a prior criminal record, the district court, although terming it "regrettable," Sent.Tr. at 6, imposed the statutorily mandated sentence of five years. Because the district court committed no legal error in the imposition of that sentence, we must affirm the decision.

Conclusion

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.