**UNITED STATES of America, Plaintiff,**

v.

**Octavio MENDOZA, Hugo Gonzalez, and Jesus Jimenez, Defendants.**

**No. 01 CR 320.**

United States District Court, N.D. Illinois, Eastern Division.

Aug. 7, 2001.

Gerald Joseph Collins, Attorney at Law, Chicago, IL, Kent R. Carlson, Attorney at Law, Chicago, IL, for Defendants.

John C. Kocoras, U.S. Atty's Office, Chicago, IL, for U.S.

## OPINION AND ORDER

NORGLE, District Judge.

Before the court is Defendants' motion to quash arrest and suppress evidence. For the following reasons, the motion is denied.

## I. BACKGROUND

This case involves the events leading up to the arrest of Defendants Gonzalez, Jiminez, and Mendoza for violations of 18 U.S.C. § 1028. The essential facts of this case are undisputed. Defendants and the Government both rely on the police reports tendered by the Government. (*See* Defs.' Mot. to Quash Arrest and Suppress Evidence, ¶ 9; Govt's Resp. to Defs.' Mot. to Quash Arrest and Suppress Evidence, pp. 4 –14.) Defendants do not submit anything to contradict what the officers claim occurred, as stated in the police reports and affidavit of Officer Bedoy. The court finds that the Government's response to Defendants' motion contains an accurate summation of the history of the arrest, as written by the officers. Therefore, the findings of fact made by the court in this ruling are the facts contained in the affidavit of Officer Bedoy and the reports prepared by the two officers. Because Defendants have not presented definite, specific, detailed and nonconjectural facts in their motion, indicating a disputed material issue of fact, a suppression hearing is not required. *United States v. Rodriguez*, 69 F.3d 136, 141 (7th Cir.1995).

The uncontested facts in this case are as follows. Officers Keating and Bedoy, members of the Chicago Police Department Ninth District Tactical Team, were assigned to patrol a designated area on the south side of Chicago for thefts, gang activity, and narcotic violations. (*See* Chicago Police Report, RD # G–188411.) On April 13, 2001 at approximately 12:00 p.m., while performing their duties, the officers observed the three Defendants standing in close proximity to each other on a public sidewalk, gesturing as if they were passing items by hand. (*See* Bedoy Affidavit ¶ 3.) The officers observed one of the Defendants nervously looking around the area. *Id.* The officers interpreted the actions of Defendants as suspicious and indicative of a drug deal. (*See id.* at ¶ 3, 4.) The officers proceeded toward the Defendants in their unmarked police vehicle. (*See id.* at ¶ 5.) One of the Defendants, later identified as Mendoza, looked in the direction of the approaching officers and fled the scene, running into a building at 5139 S. Washtenaw. *Id.* The other two Defendants, Gonzalez and Jiminez, remained on the sidewalk.

The officers then got out of their vehicle to conduct a field interview. (*See id.* at ¶ 6, 7; Chicago Police Report, RD # G–188411.) Officer Bedoy, fluent in Spanish, conducted the field interview in Spanish. (*See id.* at ¶ 1.) The officers asked Gonzalez and Jiminez to identify the individual who fled, but both Gonzalez and Jiminez indicated that they did not know his name.

(*See id.* at ¶ 7.) The officers then asked Gonzalez and Jiminez for identification. (*See id.* at ¶ 8.) Gonzalez pulled from his pocket several pieces of identification. (*See* Chicago Police Report, RD # G–188411.) The officers identified these documents as social security and resident alien identification cards with various pictures and names. The officers asked Gonzalez where he obtained the pieces of identification, to which he replied that they were fake. (*See* Bedoy Affidavit ¶ 8.) At this time, Gonzalez was placed under arrest and advised of his Miranda rights. (*See id.* at ¶ 9.) Jiminez then informed the officers that he did not have any identification with him, and he was not placed under arrest. (*See id.* at ¶ 10.)

Gonzalez and Jiminez further indicated to the officers that they lived at 5139 S. Washtenaw and that there were more pieces of identification in their apartment. (*See id.* at ¶ 9.) The officers then asked Gonzalez and Jiminez to sign consent to search forms, written in Spanish, to their apartment at 5139 S. Washtenaw. (*See id.* at ¶ 11.) Gonzalez and Jiminez signed the consent to search forms. *Id.* The officers proceeded to 5139 S. Washtenaw with Gonzalez in handcuffs. (*See id.* at ¶ 13.) Jiminez accompanied the officers to the apartment, though not in handcuffs. *Id.* Based upon the consent to search forms signed by Gonzalez and Jiminez, and the production of the keys to the building by one of Defendants, the officers entered the building without a warrant. *Id.* Upon entering the Defendants' apartment, the officers saw Mendoza lying on the floor of a bedroom in the apartment. (*See id.* at ¶ 16.) The officers also saw numerous items on the kitchen table that could be used to produce fraudulent identification, along with photos and other related materials. (*See id.* at ¶ 14.) The officers placed Jiminez and Mendoza under arrest and advised them of their Miranda rights. (*See id.* at ¶ 17.) At some point, Jiminez and Mendo-za admitted to the officers that they made the fake pieces of identification. (*See* Chicago Police Report, RD # G–188411.)

Defendants contend that the stop, detention and arrest was made without the authority of a valid search or arrest warrant, without specific and articulable facts or probable cause, and without exigent circumstances, and are therefore in violation of the Fourth Amendment. (*See* Defs.' Mot. to Quash Arrest and Suppress Evidence, ¶ 3.) Defendants seek to have the court quash their arrests and suppress all evidence and statements obtained as a direct or indirect result of the stop, detention and arrest.

## II. DISCUSSION

The Fourth Amendment protects "[t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The court begins with the idea that the Fourth Amendment generally requires a warrant for police officers to arrest persons and conduct searches of homes. *See United States v. Basinski,* 226 F.3d 829, 833 (7th Cir.2000). However, not all encounters between the police and citizens implicate the Fourth Amendment protection against unreasonable searches and seizures. *United States v. Scheets,* 188 F.3d 829, 836 (7th Cir.1999). The Seventh Circuit has recognized three categories of police-citizen encounters:

> The first category is an arrest, for which the Fourth Amendment requires that police have probable cause to believe a person has committed or is committing a crime. The second category is an investigatory stop, which is limited to a brief, non-intrusive detention. This is also a Fourth Amendment "seizure," but the officer need only have specific and articulable facts sufficient to give rise to a

reasonable suspicion that a person has committed or is committing a crime. The third category involves no restraint on the citizen's liberty, and is characterized by an officer seeking the citizen's voluntary cooperation through non-coercive questioning. This is not a seizure within the meaning of the Fourth Amendment.

*Id.* (citing *United States v. Johnson,* 910 F.2d 1506, 1508 (7th Cir.1990)). In determining which of the above categories a specific police-citizen encounter falls under, courts apply an objective standard in ascertaining whether the encounter amounted to a Fourth Amendment seizure. *Scheets,* 188 F.3d at 836; *See United States v. Jerez,* 108 F.3d 684, 689 (7th Cir.1997) ("[A] 'seizure' of the person occurs only if a reasonable person in similar circumstances would not have felt 'free to leave.' ") (citations omitted). As in *Scheets,* the events in the present case are best viewed as "along a continuum of time." *Scheets,* 188 F.3d at 836.

### A. Initial encounter between Gonzalez, Jiminez, and police officers:

The affidavit of Officer Bedoy states that while on patrol, he and his partner saw the three defendants standing close to one another on the sidewalk. (*See* Bedoy Affidavit ¶ 3.) Defendants appeared to be passing items by hand, and they looked around the area nervously. *Id.* As the officers drove toward the three men, one of them looked in the direction of the officers and then ran into a building located at 5139 S. Washtenaw. (*See id.* at ¶ 5.) The officers exited their car and approached the two men who remained, Gonzalez and Jiminez, to conduct a field interview. (*See id.* at ¶ 6, 7.) The two men were not arrested at this time. Indeed, the movants do not claim that an arrest occurred at this point. The court concludes that this aspect of the case is thus at most an investigatory stop, governed by

the analysis applied in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

A brief encounter between persons and a police officer on a public street is permitted when the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Terry,* 392 U.S. at 21, 88 S.Ct. 1868; *United States v. Swift,* 220 F.3d 502, 506 (7th Cir.2000). While reasonable suspicion is a less demanding standard than probable cause and requires less than a preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. *See United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *United States v. Raibley,* 243 F.3d 1069, 1074 (7th Cir.2001). In determining whether a particular police-citizen encounter was supported by reasonable suspicion, courts must consider the totality of circumstances known to the officer at the time of the stop. *See United States v. Quinn,* 83 F.3d 917, 921 (7th Cir.1996). In viewing the totality of circumstances, the determination of reasonable suspicion must be based on common-sense judgments and inferences about human behavior. *Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Circumstances that appear innocent to the outside observer may suggest criminal activity to experienced law enforcement personnel, and in determining whether reasonable suspicion exists, law enforcement authorities may assess these circumstances in light of their experience. *United States v. Cordell,* 723 F.2d 1283, 1285 (7th Cir.1983). Nervous or evasive behavior is a pertinent factor in determining reasonable suspicion. *Wardlow,* 528 U.S. at 124, 120 S.Ct. 673 (citations omitted). Furthermore, "[h]eadlong flight—

wherever it occurs—is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.*

■ Officer Bedoy believed the actions and behavior of the defendants to be indicative of criminal activity, specifically a drug deal. The reasonable, articulable suspicion that criminal activity was afoot were that the officers saw the three defendants standing close to one another on the sidewalk, looking around the area nervously, and apparently passing items by hand. (*See* Bedoy Affidavit ¶ 3.) Furthermore, as the officers drove toward the three Defendants, one of them looked in the direction of the officers and then ran into a building located at 5139 S. Washtenaw. (*See id.* at ¶ 5.) The court finds Officer Bedoy's beliefs reasonable, given the totality of the circumstances, and Mendoza's flight upon noticing the officers. Officer Bedoy's beliefs are further reinforced by his seven years of experience as a police officer. *See Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) ("[A] police officer views the facts [of a particular situation] through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference."); *Cordell*, 723 F.2d at 1285 (same).

That the actual exchange here did not involve drugs is not material. The inquiry rests on what a reasonable police officer would have believed. *See United States v. Cervantes*, 19 F.3d 1151, 1154 (7th Cir. 1994). Given the totality of the circumstances, a reasonable police officer would have believed that the defendants were engaged in criminal activity. Therefore, the actions of the officers did not violate the Fourth Amendment. Under the totality of the circumstances, this brief encounter on a public street was a justified investigatory stop, supported by articulated facts.

## B. Arrest of Gonzalez and Detention of Jiminez:

■ During the investigatory stop, the officers asked Gonzalez and Jiminez to identify the man who had fled, but both indicated that they did not know his name. (*See* Bedoy Affidavit ¶ 7.) The officers then asked Gonzalez and Jiminez for identification. (*See id.* at ¶ 8.) This intrusion on a public street was limited in scope and consistent with the circumstances. *See United States v. Novak*, 870 F.2d 1345, 1352 (7th Cir.1989) ("To qualify as a mere *Terry* stop, a detention must be limited in scope and executed through the least restrictive means."). When asked for identification, Gonzalez produced a small stack of fake social security cards, alien registration cards, and other identification cards. (*See* Chicago Police Report, RD # G–188411.) The officers asked Gonzalez where he obtained the pieces of identification, to which he replied that they were fake. (*See* Bedoy Affidavit ¶ 8 .) Gonzalez further indicated that he lived in an apartment at 5139 S. Washtenaw and that there were additional pieces of fake identification in his apartment. (*See id.* at ¶ 10.) At that point, these facts created probable cause to arrest Gonzalez. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (requiring a probability or substantial chance of criminal activity, not an actual showing of such activity, to establish probable cause).

■ After Gonzalez produced the stack of fake identification documents when asked for identification, the officers asked Jiminez for identification, and he indicated that had none. (*See* Bedoy Affidavit ¶ 10.) Jiminez, like Gonzalez, said he lived at 5139 S. Washtenaw, the building into which Mendoza had fled as the officers

approached. *Id.* The officers then asked Gonzalez and Jiminez to sign consent to search forms, written in Spanish, to which they consented and signed the forms. (*See id.* at ¶ 11.) The officers proceeded to 5139 S. Washtenaw with Gonzalez in handcuffs. (*See id.* at ¶ 13.) Jiminez accompanied the officers to the apartment, though not in handcuffs. *Id.* At this time, Gonzalez was already under arrest and Jiminez was not. Even if the actions of Jiminez in going to the apartment with the officers was not voluntary, this further investigatory detention of Jiminez, under the totality of the circumstances, was reasonable under *Terry.* A reasonable police officer would be justified in suspecting that Jiminez was involved in criminal activity and in investigating further, consistent with *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions."). The scope and technique of the further investigative actions by the officers were tailored to the underlying facts justifying the officers' actions. *See Scheets,* 188 F.3d at 838; *Novak,* 870 F.2d at 1352. Thus, viewed as "along a continuum of time," *Scheets,* 188 F.3d at 836, the graduated response of continuing investigation by the officers was reasonable.

## C. Entry into the Apartment at 5139 S. Washtenaw and Arrest of Jiminez and Mendoza:

Based upon the consent forms signed by Gonzalez and Jiminez, and their production of the keys to the building, the officers entered the building without a warrant. (*See* Bedoy Affidavit ¶ 13.) Upon entry, the officers observed Mendoza lying on the floor of a bedroom in the apartment, observed numerous items on the kitchen table that could be used to produce fraudulent identification, and observed photos and related materials. (*See id.* at ¶ 14, 16.) Both Jiminez and Mendoza were arrested in the apartment, and advised of their Miranda rights. (*See id.* at ¶ 17.)

 Law enforcement officers may legally search without a warrant if they obtain voluntary consent from the person whose property is to be searched. *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *see Scheets,* 188 F.3d at 839 (same); *United States v. Aghedo,* 159 F.3d 308, 310 (7th Cir.1998) (same). Gonzalez and Jiminez both voluntarily consented to the search of the apartment, and do not dispute this fact. Furthermore, the officers acted reasonably in believing that based on the production of keys to the apartment, Gonzalez and Jiminez had the authority to consent to the search. *See Illinois v. Rodriguez,* 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (basing officers' determination of consent to enter against an objective standard of whether consenting party had authority over the premises); *United States v. Chaidez,* 919 F.2d 1193, 1201–02 (7th Cir.1990) (requiring either actual or apparent authority to consent to search). Therefore, the search of the Defendants' apartment did not violate the Fourth Amendment and the evidence was lawfully seized. Furthermore, given the totality of what the officers observed and knew collectively up to that point, there was probable cause to arrest Jiminez and Mendoza, and therefore their arrest was not in violation of the Fourth Amendment.

In conclusion, the initial brief encounter between the officers and Gonzalez and Jiminez was a justified investigatory stop,

supported by articulated facts. The arrest of Gonzalez was supported by probable cause, and the investigatory detention of Jiminez and further investigative actions by the officers were tailored to the underlying facts justifying the officers' actions. The search of the apartment was based on the officers' reasonable belief as to the authority to consent given by Gonzalez and Jiminez. The evidence in the apartment was lawfully seized and the arrest of Jiminez and Mendoza was supported by probable cause.

### III. CONCLUSION

For the reasons stated above, the court denies Defendants' motion to quash arrest and suppress evidence.

IT IS SO ORDERED.