UNITED STATES of America,
Plaintiff,

v.

Bonnie FOSTER, Defendant,

No. CR.A. 03–74M.

United States District Court,
D. Delaware.

Oct. 21, 2003.

Colm F. Connolly, Esq. United States Attorney, Shannon Thee Hanson, Esq. Assistant United States Attorney, Wilmington, DE, for plaintiff, United States of America.

Eleni Kousoulis, Esq., Assistant Federal Public Defender, Wilmington, DE, for defendant, Bonnie Foster.

**MEMORANDUM**

THYNGE, United States Magistrate Judge.

## I. Introduction

The court is faced with a motion to suppress statements and tangible evidence pursuant to the Fourth and Fifth Amendments of the United States Constitution. For the reasons stated below, defendant's motion is DENIED.

## II. Background

On June 26, 2003, defendant was arrested with Janet Linderman, as part of Operation "Riverhill", which involved the interdiction and arrest of multiple users of controlled substances who purchase drugs within the City of Wilmington. *D.I. 13 at 2.* Detectives Looney and Schiavi saw two white women in a Honda in the area of 3rd and Delamore Streets in Wilmington, making what appeared to be a drug transaction. *Id.* The detectives observed the women drive along Rodney Street and pull over to the curb. *Id.* They reported their observations, including that the women were smoking an unknown substance from a Mountain Dew can, to Joseph Leary, a member of the "Tact Team Three", the law enforcement task force involved in operation Riverhill. *Id.* When Tact Team Three approached the Honda, defendant was hanging out of the driver's door, vomiting. *D.I. 13 at 3.* Detectives saw the passenger, Linderman, lean forward and place an unknown object on the floor of the vehicle. *Id.*

Defendant and Linderman were ordered out of the car, separated, and advised of their *Miranda* rights; defendant then signed the *Miranda* waiver form. *Id.* Defendant admitted to driving to Wilmington to buy crack cocaine, buying the cocaine from an unknown black man, driving to Rodney Street, parking the car, and smok-

ing half of the crack cocaine. *Id.* When defendant started to feeling ill, she handed the can to Linderman. *Id.* Linderman was smoking the cocaine when the police arrived. *Id.* Linderman's statement to the police verified defendant's statement. Further, Linderman admitted that she attempted to hide the can on the floor of the car. *Id.* Special Agent Curley, a member of the Tact Three Team, went to the passenger side, saw smoke rising from the Mountain Dew can and removed the can from the car for evidence. *Id.*

## III. Discussion

### a. Legal Standard for Granting Motion to Suppress

This court has the discretion to hold a suppression hearing regarding the admissibility of evidence and statements. Although Rule 12(b)(3)(C)[1] of the Federal Rules of Criminal Procedure governs a defendant's motion to suppress, Rule 12 does not specifically provide when such a motion entitles a defendant to a pretrial evidentiary hearing. Nor does Rule 12 mandate that a hearing occur because a motion to suppress is filed.

▮▮ The court shall conduct an evidentiary hearing when "at the very least, the factual dispute raised by [defendant's] moving papers and the government's response warrant[ed] an independent evidentiary hearing prior to trial. . ." *United States v. Voigt,* 89 F.3d 1050, 1067 (3rd Cir.1996). In order to raise such a factual dispute, the defendant's moving papers must demonstrate a "colorable claim" for relief. *United States v. Brink,* 39 F.3d 419, 424 (3rd Cir.1994) (remanded for hearing where defendant alleged facts that, if true, could violate his constitutional rights); *see also United States v. Soberon,*

929 F.2d 935, 941 (3rd Cir.1991) (if the district court could form a reasonable suspicion of prosecutorial misconduct, the proper course is to hold an evidentiary hearing). The burden is on the defendant to establish the necessity for the hearing. *United States v. Rodriguez,* 69 F.3d 136, 141 (7th Cir.1995). "That burden can be met only upon the presentation of 'definite, specific, detailed, and nonconjectoral' facts". *Id.* A district court may deny a defense motion to suppress without a hearing, if the motion fails to meet this standard. *Voigt,* 89 F.3d at 1067–8.

### b. Analysis

As stated above, defendant alleges that both her Fourth and Fifth Amendment rights were violated. *D.I. 11.* Defendant claims that the government violated her Fourth Amendment right to be free from wrongful searches and seizures. She also contends that the government violated her Fifth Amendment right against self-incrimination. *Id.* For the reasons discussed below, the court finds that the defendant offers no evidence that creates a "colorable claim", and there is no need for a pretrial evidentiary hearing.

### 1. Defendant's Fourth Amendment Claim

▮▮ The Fourth Amendment prohibits unreasonable searches and seizures. "[A] search conducted without a warrant issued upon probable cause is per se unreasonable subject to only a few specifically established and well-defined exceptions." *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576). Where no probable cause and no warrant

---

1. Rule 12. Pleadings and Motions Before Trial.

 (b) Pretrial motions. (3) Motions that must be made before trial. The following must be

made before trial: . . (C) a motion to suppress evidence . . . .

exist for a subsequent search, suppression of the evidence is required. *United States v. Roberson,* 90 F.3d 75 (3rd Cir.1996). Evidence seized in violation of the Fourth Amendment will be suppressed as "fruits of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ However, "probable cause for a warrantless arrest exists when, at the time of the arrest, the facts and circumstances within the [arresting] officers' knowledge are 'sufficient to warrant a prudent man believing that the [suspect] has committed or was committing an offense.'" *United States v. Glasser,* 750 F.2d 1197, 1205 (3rd Cir.1984) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)); *United States v. Cruz,* 910 F.2d 1072, 1076 (3rd Cir.1990). The probable cause to conduct a search may arise during the course of a *Terry* investigative detention. *See United States v. McGlory,* 968 F.2d 309, 343 (3rd Cir.1992). (Noting that officers' observations during a *Terry* stop "converted the initial reasonable suspicion [justifying the stop] into probable cause to search the vehicle"). Reasonable suspicion exists where the totality of the circumstances suggest to a police officer that criminal activity is afoot. *Terry v. Ohio,* 392 U.S. 1, 30–31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Finally, the "Fourth Amendment does not prohibit warrantless seizure of evidence of crime in plain view, even if discovery of evidence was not inadvertent." *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

■ The record indicates that the officers did have probable cause to both arrest and search defendant and her car. The investigators had reasonable suspicion to initially stop and question defendant, which established the necessary probable cause for a lawful arrest and subsequent search.

■ The court may consider several factors to determine whether the arresting officer had a reasonable suspicion to stop a defendant. One factor in assessing the reasonableness of a warrantless arrest is the experience of the arresting officer and the his knowledge of the criminal activity involved, such as the illegal drug trade, in the area where he patrols. *See Ornelas v. United States,* 517 U.S. 690, 700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (the experience of the DEA agents and their knowledge of common methods of drug smuggling is considered when determining whether reasonable suspicion exists at the time of the stop).

Here, the arresting officers are part of Operation Riverhill, which involved the interdiction and arrest of multiple users of controlled substances. *D.I. 13 at 2.* These government agents regularly deal with the illegal drug trade and usage in the Wilmington area. The experience and knowledge of illegal drug-related conduct in the Wilmington area should be considered in the court's determination of reasonable suspicion. *Id. at 2.*

■ The court can also consider the circumstances surrounding the stop. The police may detain an individual whom they believe was involved in an illegal drug sale. *McGlory,* 968 F.2d at 342–43.

In this case, the officers observed defendant and her friend making what appeared to be a drug transaction and smoking an unknown substance from a Mountain Dew can. *D.I. 13 at 2.* These facts, combined with the experience of the agents and their familiarity with the illegal drug trade in the area, provides the reasonable suspicion that defendant and her friend were engaging in criminal activity to warrant the stop. These circumstances could easily be interpreted by experienced agents as indicative of illegal drug activity. Based on their observations, they were justified in stop-

ping and questioning defendant and her friend.

 Once defendant was legally detained, the agents were entitled to briefly question her as part of their investigation of illegal activity. *See Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (officers may briefly question *Terry* detainee to obtain more information regarding possible criminal activity). During the questioning, defendant admitted that she possessed the crack cocaine. *D.I.* 13 at 3. Finally, the can of Mountain Dew containing the cocaine was in plain view of the arresting officers. *Id.* Since defendant's detention was proper and the can was in plain view, it could be lawfully seized as evidence. As a result, the agents had probable cause to stop and arrest defendant, as well, as conduct a subsequent lawful search. The circumstances surrounding the defendant's stop and arrest do not show a "colorable claim" grounded on specific or definite evidence that the officers conducted an illegal search, and, therefore, defendant's motion to suppress based on a Fourth Amendment violation is denied.

### 2. Defendant's Fifth Amendment Claim

Before the government may use statements obtained from a defendant through custodial interrogation, it must show that 1) the police adequately warned the defendant of her rights to remain silent and to have court appointed counsel, and 2) the defendant knowingly, voluntarily, and intelligently waived those rights. *Miranda v. Arizona,* 384 U.S. 471, 473–74 (1963). "A defendant must intentionally relinquish or abandon a known right or privilege to constitute a waiver." *Id.* at 475. "It is the government's burden to prove that a defendant made such a waiver." *Brewer v. Williams,* 430 U.S. 387, 403, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

 When a defendant objects to the admission of her confession, she is entitled to a fair hearing "in which both the underlying factual issues and the voluntariness of her confession are actually, and reliably determined." *Jackson v. Denno,* 378 U.S. 368, 380, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Once a defendant raises the admissibility of a statement, the government bears the burden of proving, by a preponderance of the evidence, that the statement was voluntary. *See Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). A defendant need not affirmatively waive her *Miranda* rights for the court to find the waiver is voluntary. *Cruz,* 910 F.2d at 1079–80.

 Defendant does not have a valid claim of a violation of her Fifth Amendment rights. The record clearly shows that, not only, was defendant advised of her *Miranda* rights, but defendant also executed a *Miranda* waiver form. *D.I.* 13 at 3. Despite the high burden for the government to show that defendant waived her rights, the evidence shows that she signed a waiver form, which required her to affirmatively indicate each right she was waiving. These facts prove that defendant was advised of, understood, and waived her rights. *D.I.* 13 at Exhibit D. Therefore, since she voluntarily and affirmatively waived her rights before giving any statement to the law enforcement officers, defendant's statement was legally obtained. Defendant's Fifth Amendment claim does not warrant a pre-trial hearing in the absence of fact supporting a "colorable claim".

### IV. Conclusion

For the reasons stated above, defendant's motion to suppress is DENIED.